# 24-2209-cv

# United States Court of Appeals

### for the

# Second Circuit

MOLECULAR DYNAMICS, LTD., SBDM LIMITED,
CHAUNCEY CAPITAL CORP.,

*Petitioners-Appellants,*

– v. –

SPECTRUM DYNAMICS MEDICAL LIMITED,
BIOSENSORS INTERNATIONAL GROUP LTD.,

*Respondents-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX
## FOR PETITIONERS-APPELLANTS

SCOTT M. DANNER
CHARLOTTE V. BAIGENT
PATRICK J. WOODS
HOLWELL SHUSTER & GOLDBERG LLP
*Attorneys for Petitioners-Appellants*
425 Lexington Avenue, 14th Floor
New York, New York 10017
(646) 837-5151

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Appellants Molecular Dynamics, Ltd., SDBM Limited, and Chauncey Capital Corp. state as follows:

- Petitioner SDBM Limited is the parent corporation of Petitioner Molecular Dynamics Ltd.

- Petitioner SDBM Limited has no parent corporation.

- SDBM Holdings Ltd. is the parent corporation of Petitioner Chauncey Capital Corp.

No publicly held company owns 10 percent or more of the stock in any of the foregoing entities.

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...............................................................................................1

JURISDICTIONAL STATEMENT .....................................................................2

ISSUES PRESENTED ........................................................................................3

STATEMENT OF THE CASE ............................................................................3

I.  BACKGROUND .......................................................................................4

    A.  Legal Background ..........................................................................4

    B.  Factual and Procedural Background ..............................................6

SUMMARY OF THE ARGUMENT ...............................................................11

STANDARD OF REVIEW ..............................................................................13

ARGUMENT ....................................................................................................13

I.  THE DISTRICT COURT ERRED BY HOLDING THAT PARTIES
CANNOT CONTRACT OUT OF THE NEW YORK CONVENTION'S
DEFAULT FORUM FOR VACATUR .......................................................13

    A.  The New York Convention Does Not Prohibit Selecting A Forum
For Post-Award Proceedings, In Lieu Of The Default.......................13

    B.  This Court Should Follow Its Prior Decision In *Zeevi*, Holding
Parties Can Contract Out Of The Convention's Default Fora ...........18

II.  THE DISTRICT COURT ERRED BY DISMISSING THE PETITION FOR
LACK OF SUBJECT-MATTER JURISDICTION UNDER THE FAA ......24

CONCLUSION .................................................................................................32

CERTIFICATE OF COMPLIANCE ...............................................................33

## TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*64th Assocs. LLC v. Manhattan Eye, Ear & Throat Hospital*,
2 N.Y.3d 585 (2004) ...................................................................................29

*Baker Hughes Services International, LLC v. Joshi Technologies International, Inc.*,
73 F.4th 1139 (10th Cir. 2023) ..................................................................21

*Baker Marine (Nigeria) Ltd. v. Chevron (Nigeria) Ltd.*,
191 F.3d 194 (2d Cir. 1999) .......................................................................26

*Bank of N.Y. Mellon Tr. Co., N.A. v. Morgan Stanley Mortg. Cap., Inc.*,
821 F.3d 297 (2d Cir. 2016) .......................................................................29

*BG Group, PLC v. Republic of Argentina*,
572 U.S. 25 (2014) .......................................................................................6

*Beijing Shougang Mining Inv. Co., Ltd. v. Mongolia*,
11 F.4th 144 (2d Cir. 2021) ..........................................................................5

*Bell v. Luna*,
856 F. Supp. 2d 388 (D. Conn. 2012) .......................................................18

*Brault v. Soc. Sec. Admin., Com'r*,
683 F.3d 443 (2d Cir. 2012) .......................................................................18

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*,
850 F.3d 58 (2d Cir. 2017) ............................................................. 5, 16, 25

*China Nanhai Oil Joint Service Corporation Shenzhen Branch v. Gee Tai Holdings Co. Ltd.*,
1992 No. MP 2411 (High Ct., Hong Kong 1994) ......................................15

*Corporación AIC, SA v. Hidroeléctrica Santa Rita S.A.*,
66 F.4th 876 (11th Cir. 2023) (en banc) ............................................... 5, 26

*Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*,
403 F.3d 85 (2d Cir. 2005) .........................................................................17

## TABLE OF AUTHORITIES (Continued)

Page(s)

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
    40 F.4th 56 (2d Cir. 2022) ......................................................................16

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019) ....................................................................18

*GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless
    USA, LLC*,
    590 U.S. 432 (2020) .................................................................... *passim*

*Gonsalvez v. Celebrity Cruises, Inc.*,
    935 F. Supp. 2d 1325 (S.D. Fla. 2013)...................................................20

*Gonsalvez v. Celebrity Cruises, Inc.*,
    750 F.3d 1195 (11th Cir. 2013) ................................................... 5, 14, 20

*Hoeft v. MVL Grp., Inc.*,
    343 F.3d 57 (2d Cir. 2003) ....................................................................30

*Int'l Standard Elec. Corp. v. Bridas Sociedad Anonima Petrolera, Indus. y
    Comercial*,
    745 F. Supp. 172 (S.D.N.Y. 1990) ..........................................................16

*Iraq Telecom Ltd. v. IBL Bank S.A.L.*,
    2023 WL 2961739 (2d Cir. Apr. 17, 2023).............................................16

*JA Apparel Corp. v. Abboud*,
    568 F.3d 390 (2d Cir. 2009) ..................................................................30

*Joseph Müller A. G. v. Sigval Bergesen*,
    BGE 108 Ib 85 (Swiss Fed. Sup. Ct., 1982).............................................17

*Karaha Bodas Co. v. Perusahaan Pertambangan
    Minyak Dan Gas Bumi Negara*,
    364 F.3d 274 (5th Cir. 2004) ..................................................... 5, 16, 22

*Lander Co., Inc. v. MMP Invs., Inc.*,
    107 F.3d 476 (7th Cir. 1997) ...................................................... 4, 13, 20

*Lebron v. Sanders*,
    557 F.3d 76 (2d Cir. 2009) ....................................................................18

## TABLE OF AUTHORITIES (Continued)

Page(s)

*Medellín v. Texas*,
552 U.S. 491 (2008) .................................................................... 6, 13, 14

*OJSC Ukrnafta v. Carpatsky Petroleum Corp.*,
957 F.3d 487 (5th Cir. 2020) ................................................................16

*Reddy v. Buttar*,
38 F.4th 393 (4th Cir. 2022) .................................................................21

*Rederi Aktiebolaget Sally v. S.r.l. Termarea*,
IV Y.B. Com. Arb. 294 (Florence Ct. App, 1979) ...............................17

*Republic of Ecuador v. Chevron Corp.*,
638 F.3d 384 (2d Cir. 2011) .................................................................26

*Resource Grp. Int'l Ltd. v. Chishti*,
91 F.4th 107 (2d Cir. 2024) ..................................................................28

*Ronnen v. Ajax Elec. Motor Corp.*,
88 N.Y.2d 582 (1996)............................................................................29

*Sanchez-Llamas v. Oregon*,
548 U.S. 331 (2006) ...............................................................................6

*Scandinavian Reins. Co. Ltd. v. Saint Paul Fire and Marine Ins. Co.*,
668 F.3d 60 (2d Cir. 2012) .......................................................... *passim*

*Scherk v. Alberto–Culver Co.*,
417 U.S. 506 (1974) .................................................................. 4, 21, 23

*Slamow v. Del Col*,
174 A.D.2d 725 (2d Dep't 1991) ..........................................................30

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for Southern Dist. of Iowa*,
482 U.S. 522 (1987) ......................................................................... 1, 14

*Société Pabalk Ticaret Sirketi v. Société Anonyme Norsolor*,
1985 Rev. Arb. 431 (Ct. Cassation, France 1985) ...............................15

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
450 F.3d 100 (2d Cir. 2006) .................................................................25

iv

## TABLE OF AUTHORITIES (Continued)

**Page(s)**

*Steel Corp. of Philippines v. Int'l Steel Servs.*,
354 F. App'x 689 (3d Cir. 2009)............................................................27

*Telenor Mobile Commc'ns. AS v. Storm LLC*,
584 F.3d 396 (2d Cir. 2009) ..............................................................26

*Tutor Perini Corp. v. City of New York*,
225 A.D.3d 439 (1st Dep't 2024)........................................................30

*Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*,
489 U.S. 468 (1989) ............................................................................17

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
486 U.S. 694 (1988) ............................................................................1

*Wash. Nat'l Ins. Co. v. OBEX Grp. LLC*,
958 F.3d 126 (2d Cir. 2020) ..............................................................13

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*,
126 F.3d 15 (2d Cir. 1997) ...................................................... *passim*

*Zeevi Holdings Ltd. v. Republic of Bulgaria*,
2011 WL 1345155 (S.D.N.Y. Apr. 5, 2011) .....................................18

*Zeevi Holdings Ltd. v. Republic of Bulgaria*,
494 F. App'x 110 (2d Cir. 2012)............................................... *passim*

*Zurich Am. Ins. Co. v. Team Tankers A.S.*,
2014 WL 2945803 (S.D.N.Y. June 30, 2014)....................................25

*Zurich Am. Ins. Co. v. Team Tankers A.S.*,
811 F.3d 584 (2d Cir. 2016) ..............................................................30

**St**atutes

9 U.S.C. § 1 ................................................................................. 2, 27

9 U.S.C. § 2 .....................................................................................27

9 U.S.C. § 202 ......................................................................... 2, 27, 31

9 U.S.C. § 203 ........................................................................ *passim*

## TABLE OF AUTHORITIES (Continued)

**Page(s)**

9 U.S.C. §§ 201–08 .......................................................................... 5, 24

28 U.S.C. § 1291 ..................................................................................2

28 U.S.C. § 1331 ................................................................................24

Pub L. No. 91-368, 84 Stat. 692–93 (1970)......................................24

**Other Authorities**

A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ................................................................ 6, 17

Christopher R. Drahozal, *The New York Convention and the American Federal System*, 2012 J. Disp. Resol. 101 (2012) ................................14

John F. Coyle, Robin J. Effron, & Maggie Gardner, *Contracting Around the Hague Service Convention*, 53 U.C. Davis L. Rev. Online 53 (2019) ...............14

Restatement (Third) U.S. Law of Int'l Comm. Arb. § 4.14 ...................21

UNCITRAL, *Comments by Governments and Organizations on the Draft Convention on the Recognition and Enforcement of Foreign Arbitral Awards* (1958) ................................................................14

UNCITRAL, *France, Federal Republic of Germany and Netherlands: Working Paper on Articles III, IV, and V of the Draft Convention* (1958)..........14

UNCITRAL, *Model Law on International Commercial Arbitration* (2008) ..........23

UNCITRAL, *Secretariat Guide on the Recognition and Enforcement of Foreign Arbitral Awards* (2016 Ed.)...................................17

## INTRODUCTION

This case presents a pure legal question as to whether parties to an international arbitration agreement can contract out of the default forum for seeking to set aside an arbitration award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 (hereafter, the "New York Convention" or "Convention").  The court below held unequivocally that contracting parties can *never* do so.  But Supreme Court precedent is clear that parties can avoid non-mandatory default rules in multilateral treaties.  *See, e.g.*, *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988) (holding parties can contract out of Hague Service Convention); *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for Southern Dist. of Iowa*, 482 U.S. 522, 541–42 (1987) (holding parties can seek discovery outside Hague Evidence Convention procedures).

This Court, in *Zeevi Holdings Ltd. v. Republic of Bulgaria*, made clear that parties to an international arbitration agreement can select their preferred exclusive forum for post-award proceedings subject to the New York Convention, thereby contracting out of the Convention's default forum rules.  494 F. App'x 110, 113 (2d Cir. 2012) (summary order) ("*Zeevi*").  Indeed, nothing in the Convention prohibits parties from making that choice.  *See GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 440 (2020) ("*GE Energy*")

1

(holding district court erred in holding New York Convention prohibits enforcement by nonsignatories and remanding for further proceedings).

Against the text of the Convention, and its strong policy of party autonomy, the district court erroneously held that the Convention divested the parties' chosen exclusive forum for post-award proceedings of subject-matter jurisdiction. Not so. The Convention neither confers, nor divests, courts of subject-matter jurisdiction. The district court had federal question subject-matter jurisdiction over the petition governed by the Convention under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (the "FAA"). *See Scandinavian Reins. Co. Ltd. v. Saint Paul Fire and Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012) ("[T]he district court had subject-matter jurisdiction under 9 U.S.C. § 203, which provides federal jurisdiction over actions to confirm or vacate an arbitral award that is governed by the Convention."). For these reasons, this Court should vacate and remand for further proceedings.

## JURISDICTIONAL STATEMENT

The district court had federal question jurisdiction to decide Petitioners-Appellants' petition for vacatur under 9 U.S.C. §§ 202–03. The district court entered final judgment on July 30, 2024, dismissing the case for lack of subject-matter jurisdiction. Special Appendix ("SPA") 27. Petitioners timely appealed on August 16, 2024. Appellate jurisdiction lies under 28 U.S.C. § 1291.

## ISSUES PRESENTED

1.      Whether, under the New York Convention, parties can contractually select one seat for arbitration and another seat for post-arbitral proceedings, including a proceeding to vacate or set aside an award.  It is respectfully submitted that this question, reviewed *de novo*, should be answered in the affirmative.

2.      Whether, under the FAA, district courts have subject matter jurisdiction over post-arbitration proceedings governed by the New York Convention, including a proceeding to vacate a foreign arbitral award.  It is respectfully submitted that this question, reviewed *de novo*, should be answered in the affirmative.

## STATEMENT OF THE CASE

Following an arbitration before the Swiss Arbitration Centre, the panel issued a Partial Award and Final Award on May 18, 2022, and July 8, 2022, respectively (together, the "Award").  Confidential Joint Appendix ("CA") 50–174, 182–205. The parties' arbitration agreement included a choice of forum clause, selecting the Swiss Arbitration Centre for the arbitration and New York courts as the exclusive forum for post-award proceedings.  CA 43–44.  Petitioners-Appellants filed a petition to vacate the Award in the United States District Court for the Southern District of New York, in accordance with the forum-selection clause.  CA 175–81. The District Court (Failla, *J.*), dismissed the petition for lack of subject-matter jurisdiction, holding that a forum selection clause designating New York courts as

3

the exclusive forum for vacating a Swiss arbitral award is barred by the New York Convention. SPA 1–26.

## I. BACKGROUND

### A. Legal Background

The New York Convention is a multilateral treaty concerning international arbitration, which "focuses almost entirely on arbitral awards." *GE Energy*, 590 U.S. at 438. "The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). The requirements of the New York Convention are incorporated into federal law in Chapter 2 of the FAA. *See* 9 U.S.C. §§ 201–08.

The New York Convention provides a non-mandatory rule in Article V(1)(e), according to which a court in any contracting state "*may*" refuse recognition and enforcement of an arbitration award that has been vacated "by a competent authority of the country in which, or under the law of which, the award was made." SPA 29–30 (emphasis added). However, the New York Convention does not provide any rules specifically addressing vacatur. *See, e.g.*, *Lander Co., Inc. v. MMP Invs., Inc.*, 107 F.3d 476, 478 (7th Cir. 1997) ("[T]he New York Convention contains no

4

provision for seeking to vacate an award"); *Gonsalvez v. Celebrity Cruises, Inc.*, 750 F.3d 1195, 1197 (11th Cir. 2013) ("The Convention does not mention vacatur actions"); *Corporación AIC, SA v. Hidroeléctrica Santa Rita S.A.*, 66 F.4th 876, 885 (11th Cir. 2023) (en banc) ("The only reference to vacatur (*i.e.*, 'set aside or suspended') in Article V is found in subsection (1)(e)," which "does not purport to regulate the procedures or set out the grounds for vacatur").

Courts have interpreted Article V(1)(e) to *imply* a default rule—namely, that courts in the country in which, or under the law of which, the award was made have "primary jurisdiction" to vacate or set aside the award, and courts of all other contracting states have "secondary jurisdiction" to recognize and enforce the award. *See, e.g.*, *CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 71 (2d Cir. 2017) ("Under the New York Convention, the country in which the award is made is said to have *primary* jurisdiction over the arbitration award." (citation omitted)); *Beijing Shougang Mining Inv. Co., Ltd. v. Mongolia*, 11 F.4th 144, 160 n.15 (2d Cir. 2021) (same); *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997) (same); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 292 (5th Cir. 2004)

("All other signatory States are *secondary* jurisdictions, in which parties can only contest whether that state should enforce the arbitral award." (citation omitted).

But the Convention is silent on whether parties can contract *out* of the default fora for post-arbitration proceedings, including recognition, enforcement, and vacatur. SPA 28–30. "The interpretation of a treaty, like the interpretation of a statute, begins with its text," *Medellín v. Texas*, 552 U.S. 491, 506 (2008), and, "in general, 'a matter not covered is to be treated as not covered'—a principle 'so obvious that it seems absurd to recite it,'" *GE Energy*, 590 U.S. at 440 (quoting A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 93 (2012)). Deciding an issue not covered in the Convention, therefore, requires recourse to domestic arbitral law. *See Medellín*, 552 U.S. at 506; *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 351 (2006) ("[A]bsent a clear and express statement to the contrary, the procedural rules of the forum State govern the implementation of the treaty in that State." (internal citations omitted)); *BG Group, PLC v. Republic of Argentina*, 572 U.S. 25, 39 (2014) (holding that "in the absence of explicit language in a treaty demonstrating [otherwise], our ordinary interpretive framework applies").

## B.   Factual and Procedural Background

The dispute between the parties arises from a failed joint venture to develop a medical camera capable of imaging the whole body, as well as specific organs to

detect cancer.  CA 82.  That joint venture is Petitioner Molecular Dynamics Ltd. ("MD").  CA 41, 78.

The joint venture was created by Petitioners SDBM Limited ("SDBM") and Chauncey Capital Corp. ("Chauncey") on the one hand, and Respondent-Appellee Biosensors International Ltd. ("Biosensors"), on the other.  CA 41.  The parties structured the joint venture through a suite of five agreements—an Asset Purchase Agreement executed on May 12, 2013; and a Joint Venture and Investor Agreement, License Agreement, Contribution and Engineering Assistance Agreement, and Loan and Security Agreement executed on October 15, 2013 (collectively, the "Agreements").  *See* CA 38–49.  Respondent Spectrum Dynamics Medical Limited ("SDML") is not a party to any of the Agreements; however, in January 2017, Biosensors purported to assign its rights and liabilities under the Agreements to SDML.  CA 113–14.

The License Agreement—under which the dispute later arose—governed the allocation of intellectual property rights as between Biosensors and MD, defining their respective "fields of use."  CA 43–45.  In short, Biosensors was prohibited from developing a whole-body camera, and MD was prohibited from developing an organ-specific camera or cardiac applications.  CA 130–31.

The License Agreement directed the parties to bring (i) any disputes arising under or related to the transactions contemplated by the agreement to Swiss

arbitration; and (ii) any "matters" "concerning" the arbitration (such as post-arbitration proceedings) exclusively before New York courts (CA 44–45):

> [E]ach Party hereto agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Agreement or the transactions contained in or contemplated by this Agreement, exclusively to arbitration in accordance with the Swiss Rules of International Arbitration of the Swiss Chambers' Arbitration Institution in force on the date on which the Notice of Arbitration is submitted . . . ***The seat of the Chosen Arbitration shall be Geneva, Switzerland, unless the parties agree to another location.*** The proceedings of the Chosen Arbitration shall be conducted in English.
>
> On matters of injunctive relief, the parties agree that the courts of New York, New York shall have non-exclusive jurisdiction and are competent courts for the purposes thereof, and ***on matters [] concerning the Chosen Arbitration, the courts of New York, New York will have exclusive jurisdiction thereupon.***

The License Agreement thereby selected the Swiss Arbitration Centre as the forum for the arbitration, and New York courts as the exclusive forum for post-award proceedings. CA 44–45. The contracting parties were sophisticated business entities advised by competent counsel. CA 117, 126–27. By agreeing to channel all disputes concerning an arbitration under the Agreements to the courts of New York, the parties made clear that post-award disputes—whether confirmation, enforcement, recognition, or vacatur—would be centralized in a single forum governed by U.S. arbitral law. CA 44–45.

8

In April 2018, SDML commenced arbitration against Petitioners before the Swiss Arbitration Centre (the "Arbitration"), pursuant to the Agreements. CA 41, 44–45, 47, 49. Its Statement of Claim sought, *inter alia*, a declaration that SDML properly terminated the License Agreement and was free to sell its own competing whole-body (or "360-degree") camera developed by the same engineers working on MD's camera. CA 73, 114–15, 152. Petitioners, in turn, brought counterclaims, seeking, *inter alia*, damages for Biosensors' development of a competing whole-body camera in violation of the Agreements. CA 148.

The Arbitration was conducted in English before a three-person Tribunal in Geneva. CA 178. The parties submitted numerous witness statements and exhibits, and seven days of hearings were held during which the Tribunal observed cross-examinations of 11 witnesses. CA 68. On March 17, 2021, after post-hearing written submissions, the panel declared the proceedings closed. CA 69.

The Arbitration was pervaded not only by partiality, misconduct, and manifest disregard of the law, but also by plain and simple fraud. Witnesses for Respondents-Appellees gave false testimony under oath. CA 179. The Chair of the Tribunal resigned nearly a year after the hearing—while his draft award was circulating—in response to a partiality challenge by Petitioners. CA 69–70. The Tribunal refused to hear newly discovered evidence of fraud, perjury, and suppression of evidence that came to light after hearing. CA 167–69. Finally, the Award rested on an

implausible theory of New York contract law concerning material breach that no party had briefed or argued. CA 122–135. Ultimately, the Tribunal issued the Award in two parts in May and July 2022, largely in favor of Respondents and against Petitioners. CA 50–174, 182–205.

On June 20, 2022, Petitioners filed a petition to vacate the Partial Award in the District Court for the Southern District of New York on the basis that the License Agreement's forum selection clause conferred exclusive jurisdiction over post-arbitral proceedings on New York courts. On August 12, 2022, after the Final Award was issued, Petitioners filed an amended petition to vacate the combined Award. CA 175–81.

Pursuant to Section 10 of the FAA, Petitioners sought vacatur on the bases that (1) Respondents procured the Award through suborning perjury and suppressing evidence; (2) the Chair of the Tribunal resigned after it was discovered that he failed to disclose a material conflict of interest, and his eleventh-hour replacement after the close of evidence did not remedy the taint caused by his "evident partiality"; (3) the Tribunal refused to reopen the proceedings to hear newly discovered material evidence; and (4) the Award manifestly disregarded New York law. CA 179–80.

The district court dismissed the petition to vacate the Award for lack of subject-matter jurisdiction. SPA 1–26. The district court held that, under the New York Convention, "Switzerland has the *exclusive authority* to vacate or annul the

10

Awards" made in Switzerland—regardless of what the contracting parties negotiated in their arbitration agreement. SPA 18 (emphasis added). Rather than interpreting and giving effect to the forum-selection clause, the district court held that "Petitioners fail to demonstrate that the New York Convention can be circumvented in this manner." SPA 19. In short, the district court held that parties can *never* select a forum for vacatur other than the default primary jurisdiction under the Convention without "contraven[ing] the Convention." SPA 23. Thus, the court never reached the question of whether that interpretation was the parties' intent. SPA 23.

Petitioners now appeal from the district court's determinations (1) that the New York Convention prohibits parties from contractually selecting a forum for vacatur proceedings other than the default primary jurisdiction; and (2) that as a result, the court lacked subject-matter jurisdiction over the petition.

## SUMMARY OF THE ARGUMENT

The district court erred as a matter of law in holding that it lacked subject-matter jurisdiction to vacate the Award. While the New York Convention points to Switzerland as the default primary jurisdiction to vacate or set aside a Swiss arbitral award, the parties instead chose New York as the exclusive forum for post-award proceedings. CA 44–45. Just as parties contract *in* to the New York Convention through their arbitration agreements, they are free to contract *out* of its default rules.

Nothing in the New York Convention prohibits parties from designating an exclusive forum for post-award proceedings, in lieu of the Convention's default, in their arbitration agreements. "The Convention is simply silent on the issue," and "[t]his silence is dispositive here because nothing in the text of the Convention could be read to otherwise *prohibit* [it]." *GE Energy*, 590 U.S. at 440 (holding New York Convention is silent on, and thus does not prohibit, nonsignatory enforcement of arbitration agreement). Thus, this Court correctly held in *Zeevi* that parties to an international arbitration agreement can select their preferred exclusive forum for post-award proceedings subject to the New York Convention. *See* 494 F. App'x at 113. This Court should follow its prior decision in *Zeevi*.

The New York Convention's default forum for vacatur is nothing more than the default. It is not a jurisdictional rule that divested the district court of subject-matter jurisdiction over the vacatur petition under the FAA. As this Court has made clear, U.S. district courts have subject-matter jurisdiction under Section 203 of the FAA over an "action or proceeding" under the Convention, including "actions to confirm or vacate an arbitral award that is governed by the Convention." *Scandinavian Reins. Co. Ltd.*, 668 F.3d at 71. All parties, and the district court, agree that the Award is governed by the Convention. *See* SPA 7. The district court thus had subject-matter jurisdiction over the vacatur petition and erred by concluding otherwise. This Court should vacate and remand for further proceedings.

## STANDARD OF REVIEW

The district court's decision that it lacked subject-matter jurisdiction to consider the petition for vacatur is a question of law reviewable *de novo*. *See Wash. Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126, 133 (2d Cir. 2020).

## ARGUMENT

### I. THE DISTRICT COURT ERRED BY HOLDING THAT PARTIES CANNOT CONTRACT OUT OF THE NEW YORK CONVENTION'S DEFAULT FORUM FOR VACATUR

#### A. The New York Convention Does Not Prohibit Selecting A Forum For Post-Award Proceedings, In Lieu Of The Default

The New York Convention does not prohibit contracting parties from designating an exclusive forum for post-award proceedings, supplanting the default primary jurisdiction. Interpretation of the New York Convention, like any treaty, "begins with its text." *Medellín*, 552 U.S. at 506. The text of the Convention is silent on whether parties can designate a single forum for post-award proceedings including vacatur, other than the default primary jurisdiction. Article V(1)(e) states that "*[r]ecognition and enforcement* of the award *may* be refused," upon proof that the award "has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." SPA 29–30 (emphasis added). But the Convention contains no provision conferring or regulating vacatur authority. *See, e.g.*, *Lander Co., Inc.*, 107 F.3d at 478 ("[T]he New York Convention

contains no provision for seeking to vacate an award."); *Gonsalvez*, 750 F.3d at 1197 ("The Convention does not mention vacatur actions.").

Notably, Article V(1)(e) is a permissive provision. SPA 29–30. In such cases, Supreme Court precedent is clear that parties can avoid non-mandatory default rules in multilateral treaties. *See, e.g.*, *Schlunk*, 486 U.S. at 699 (holding parties can contract out of Hague Service Convention); *Societe Nationale Industrielle Aerospatiale*, 482 U.S. at 541–42 (holding parties can seek discovery outside Hague Evidence Convention procedures); *see also* John F. Coyle, Robin J. Effron, & Maggie Gardner, *Contracting Around the Hague Service Convention*, 53 U.C. Davis L. Rev. Online 53 (2019); Christopher R. Drahozal, *The New York Convention and the American Federal System*, 2012 J. Disp. Resol. 101 (2012).

To aid in treaty interpretation, this Court may also consider "the negotiation and drafting history of the treaty." *Medellín*, 552 U.S. at 507 (cleaned up). The negotiation of Article V of the Convention further demonstrates that the contracting states did not debate whether parties could select a forum other than the seat for set aside proceedings. *See* UNCITRAL, *Comments by Governments and Organizations on the Draft Convention on the Recognition and Enforcement of Foreign Arbitral Awards* (1958), https://tinyurl.com/ybsj9vd3. For example, France, Germany, and the Netherlands proposed language allowing for refusal to enforce an award "if the party against whom the award is invoked produces evidence that he has initiated an

14

ordinary procedure of recourse against that award," without specifying where such recourse must occur. *See* UNCITRAL, *France, Federal Republic of Germany and Netherlands: Working Paper on Articles III, IV, and V of the Draft Convention* (1958), https://tinyurl.com/ya928tah.

Finally, this Court may look to the "postratification understanding of signatory nations," to shed light on the meaning of the Convention. *Medellín*, 552 U.S. at 507. Courts of other Convention signatories have interpreted Article V(1) as a non-mandatory provision, permitting the non-enforcement of a foreign arbitral award on one of the enumerated grounds. *See, e.g.*, *Société Pabalk Ticaret Sirketi v. Société Anonyme Norsolor,* 83-11.355, 1985 Rev. Arb. 431 (Ct. Cassation, France 1985), with English translation in 24 ILM 360 (1985) (holding French courts may enforce Convention award under domestic law, even if set aside in the primary jurisdiction); *China Nanhai Oil Joint Service Corporation Shenzhen Branch v. Gee Tai Holdings Co. Ltd*., 1992 No. MP 2411 (High Ct. Hong Kong 1994) (holding court had residual discretion to enforce award, and responding party waived objection to Convention award based on panel lacking jurisdiction).

Today, courts and commentators interpret Article V(1)(e) to "specifically contemplate[] that the state in which, or under the law of which, the award is made, will be free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief." *Yusuf Ahmed*

15

*Alghanim & Sons*, 126 F.3d at 23. But while the Convention *contemplates* that an award may be set aside by courts in the default primary jurisdiction, it does not *prohibit* the parties from agreeing otherwise.

The district court erroneously held that parties can *never contract out* of the New York Convention's default forum for vacatur, citing cases in which no party alleged that such an agreement was made.[1] Those cases are inapposite because they merely recite the well-settled default forum under the Convention, without addressing the present question as to whether parties can contract out of the default.

Neither the Convention, its drafting history, nor any case cited by the district court below prohibit parties from supplanting the default primary jurisdiction for set aside proceedings with their preferred forum. As discussed in the context of whether arbitration agreements may be enforced against nonsignatories, "[t]he Convention is simply silent on the issue," and "[t]his silence is dispositive." *GE Energy*, 590 U.S.

---

[1] *See, Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 18 n.1 (vacatur petition in seat); *CBF Industria de Gusa S/A v. AMCI Holdings, Inc*., 850 F.3d 58, 70 (2d Cir. 2017) (enforcement petition); *Karaha Bodas Co., L.L.C.*, 500 F.3d at 115 n.1 (enforcement petition); *Scandinavian Reins. Co. Ltd.*, 668 F.3d at 71 (vacatur petition in seat); *OJSC Ukrnafta v. Carpatsky Petroleum Corp.*, 957 F.3d 487, 497 (5th Cir. 2020) (enforcement petition); *Int'l Standard Elec. Corp. v. Bridas Sociedad Anonima Petrolera, Indus. y Comercial*, 745 F. Supp. 172, 178 (S.D.N.Y. 1990) (vacatur outside seat without agreement modifying Convention's default forum); *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.,* 40 F.4th 56, 62 (2d Cir. 2022) (enforcement petition); *Iraq Telecom Ltd. v. IBL Bank S.A.L.*, 2023 WL 2961739 (2d Cir. Apr. 17, 2023) (unreported) (enforcement petition).

432, 440. Where a treaty is silent, "a matter not covered is to be treated as not covered—a principle so obvious that it seems absurd to recite it." *Id.* (quoting A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 93 (2012)).

Finally, the Convention's respect for party autonomy not only does not prohibit, but weighs in favor of upholding, the parties' choice of forum for vacatur. The Convention reflects the "prevalence of party autonomy." *See* UNCITRAL, *Secretariat Guide on the Recognition and Enforcement of Foreign Arbitral Awards* (2016 Ed.), at 191, https://tinyurl.com/5n6te4eb. For example, Article V(1)(d) provides that courts may refuse to enforce an award if "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties." SPA 30. This Court has refused enforcement on that basis, holding the "strong public policy in favor of international arbitration . . . 'is simply to ensure the enforceability, *according to their terms*, of private agreements to arbitrate.'" *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 91 (2d Cir. 2005) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989)).

Similarly, courts in other contracting states have enforced contractual choices in international arbitration agreements, even over mandatory domestic law. *See Joseph Müller A. G. v. Sigval Bergesen*, BGE 108 Ib 85 (Swiss Fed. Sup. Ct., 1982) ("[Through] agreement of the parties, even the mandatory rules of procedure of a

State also can be declared inapplicable and they can be substituted with the *parties'*

*own rules*." (emphasis added)); *Rederi Aktiebolaget Sally v. S.r.l. Termarea*, IV Y.B.

Com. Arb. 294 (Florence Ct. App, 1979) (agreement to three-member panel properly

overrode English procedural law). The principle of party autonomy embedded in

the Convention favors the recognition and enforcement of international arbitration

agreements according to their terms, including their forum selection clauses.

**B.** **This Court Should Follow Its Prior Decision In *Zeevi*, Holding Parties Can Contract Out Of The Convention's Default Fora**

The question before the Court is whether parties can contract out of the New

York Convention's default rules by selecting their own preferred forum for post-

arbitration proceedings. This Court decided the question in the affirmative in *Zeevi*.

494 F. App'x at 113.[2] There, the parties entered into an arbitration agreement

selecting Paris, France as the forum for any arbitration, but selecting Bulgaria as the

exclusive forum for post-award proceedings for the "execution of an award." *Zeevi*

-----------------------

[2] Although *Zeevi* is not binding precedent, this Court often relies on summary orders as persuasive authority. *See Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 450 n.5 (2d Cir. 2012) ("We are, of course, permitted to consider summary orders for their persuasive value, and often draw guidance from them in later cases."); *Force v. Facebook, Inc*., 934 F.3d 53, 66 n.21 (2d Cir. 2019) (same); *Lebron v. Sanders*, 557 F.3d 76, 77 n.2 (2d Cir. 2009) ("[W]e presume that a summary order contains citations to precedential opinions that are relevant."); *see also Bell v. Luna*, 856 F. Supp. 2d 388, 401 n.3 (D. Conn. 2012) ("[S]ince summary orders are meant to be used only when the law on a given topic is settled, summary orders presumably provide particularly good evidence of what legal principles the Second Circuit considers as established at any given point in time.").

*Holdings Ltd. v. Republic of Bulgaria*, 2011 WL 1345155, at *1 (S.D.N.Y. Apr. 5, 2011). When Bulgaria brought post-award enforcement proceedings in New York—as allowed under the New York Convention's default rule that arbitration awards may be enforced in any contracting state—then-District Judge Sullivan enforced the parties' forum selection clause, dismissing the case in favor of Bulgaria for post-award execution. *Id.* at *6.

As the district court in *Zeevi* persuasively reasoned: "[I]f a party is able to use the New York Convention to skirt his contractual obligation to submit an arbitration award to an agreed-upon forum," that would create a "potential chilling effect on international business." *Id.* at *3 (emphasis added). The New York Convention, "enacted to promote international trade," asks courts of all contracting states to enforce the terms of arbitration agreements. *Id.* In *Zeevi*, the district court did so, concluding that Bulgaria had not overcome the presumptive enforceability of the forum-selection clause. *Id.* at *6.

On *de novo* review, this Court in *Zeevi* affirmed the parties' contractual choice to designate one forum for the arbitration (France), and another for post-award enforcement proceedings (Bulgaria). 494 F. App'x at 112. In doing so, this Court made clear that parties can contract out of the New York Convention's default rules. Indeed, Articles III and V of the New York Convention provide that "[e]ach Contracting State shall recognize arbitral awards as binding and enforce them" and

19

may refuse enforcement "only if" certain enumerated conditions are met. Invoking domestic procedural law, this Court held that enforcement could also be refused based on the forum-selection clause, which was an enforceable agreement to designate a single, exclusive forum for enforcement. *Zeevi*, 494 F. App'x at 114.

The district court erroneously distinguished *Zeevi*, holding that parties can contract out of some default rules under the Convention and not others. The court drew a false distinction between waiving the right to seek enforcement in any secondary jurisdiction (permitted under *Zeevi*), and waiving the right to resist vacatur outside the primary jurisdiction (not permitted below). SPA 21. The court reasoned that "whether parties can contract away the right to invoke a secondary jurisdiction's undisputed authority under the New York Convention to enforce a foreign award is a far different question from whether parties can convey to a secondary jurisdiction the authority to vacate a foreign award — an authority that it does not otherwise have." *Id.*

But the Convention's default forum for vacatur is simply *not* a matter of subject-matter jurisdiction. The Circuits agree that the Convention does not confer subject-matter jurisdiction on any court to vacate an award—that authority comes from the FAA. *See, e.g.*, *Lander Co.*, 107 F.3d at 478 ("[T]he New York Convention contains no provision for seeking to vacate an award."); *Gonsalvez v. Celebrity Cruises, Inc.*, 935 F. Supp. 2d 1325, 1330–31 (S.D. Fla.), *aff'd*, 750 F.3d 1195 (11th

Cir. 2013) ("[T]he Convention does not even authorize actions to vacate arbitration awards."); *See Scandinavian Reins. Co. Ltd.*, 668 F.3d at 71 (2d Cir.) (holding the FAA "provides federal jurisdiction over actions to confirm or vacate an arbitral award that is governed by the Convention"); *Reddy v. Buttar*, 38 F.4th 393, 399 (4th Cir. 2022) (holding the FAA "confers *subject matter jurisdiction* on U.S. district courts over actions 'falling under' the Convention" (emphasis in original)). Further, the Circuits have resisted interpreting Convention rules as jurisdictional. *See Baker Hughes Servs. Int'l, LLC v. Joshi Techs. Int'l, Inc.*, 73 F.4th 1139, 1145 (10th Cir. 2023) (holding "every circuit court to consider this issue has rejected the notion that article IV's rules are jurisdictional").

Turning to the policy interests at stake, contractually selecting a single forum for enforcement runs counter to the Convention's policy in favor of the portability of arbitral awards among all contracting nations. *See Scherk*, 417 U.S. at 520 n.15. ("The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts"). Yet this Court in *Zeevi* agreed parties are free to make that choice, reaffirming the strong policy in favor of enforcing forum selection clauses. *See* 494 F. App'x at 113.

In the present case, the parties' exclusive forum-selection clause for post-award proceedings works no harm to the Convention's default rule pointing to a

single "primary jurisdiction" to set aside an award. *See* Restatement (Third) U.S. Law of Int'l Comm. Arb. § 4.14, comment (d) (expressing the policy preference that "[i]f the parties designate an arbitration law to govern the arbitration, other than the arbitration law of the seat," that forum should have default primary jurisdiction); *Karaha Bodas Co.*, 364 F.3d at 308 ("Although an arbitration agreement may make more than one country eligible for primary jurisdiction under the New York Convention, the predominant view is that the Convention permits only one in any given case.").

Further, Petitioners submitted an expert opinion below by Professor George Bermann of Columbia Law School, who co-authored the UNCITRAL Guide to the New York Convention and was Chief Reporter of the Restatement of the U.S. Law of International Commercial and Investor-State Arbitration (the "Restatement"). *See* Public Joint Appendix ("JA") 113. In his report, Professor Bermann set out that "there are at least some occasions on which the annulment jurisdiction of the courts at the seat would *not* be exclusive." JA 118. One occasion is "[i]f the parties so agree," for example, by designating one country as the seat and another as the source of arbitral law. JA 114. As he explained: "[T]he wording of the New York Convention does not support the view that, notwithstanding an agreement by the parties to the contrary, annulment of an award can only be had at the seat." JA 123.

Regardless, a forum-selection clause that **supplants** the primary jurisdiction with the parties' preferred forum for vacatur is consistent with the policy reasons for confining vacatur proceedings to a single jurisdiction. As Professor Bermann, among the foremost experts on the Convention, explained below (JA 120):

> [T]he competence of the designated court does not merely *supplement* the competence of courts at the seat, but rather *supplants* it . . . There would be no multiplicity of fora entitled to annul an award. Rather competence would reside in the courts of a single jurisdiction, namely, the jurisdiction on whose courts the parties agreed to confer annulment authority.

Whether an arbitration agreement varies the Convention's default rules for primary jurisdiction or secondary jurisdiction, enforcing the forum-selection clause does not "contravene[] the New York Convention." SPA 23. Far from prohibiting the parties' contractual choice, the New York Convention favors respect for party autonomy in international arbitration agreements. UNCITRAL Model Law on International Commercial Arbitration § 5(b) (2006), https://tinyurl.com/3xj4dhef (describing the "special importance" of "[a]utonomy of the parties" in international arbitration). So, too, does Supreme Court precedent. *See, e.g.*, *Scherk*, 417 U.S. at 516 (holding a forum-selection clause is "essential to any international business transaction" and "obviates the danger that a dispute under the agreement might be submitted to a forum hostile to the interests of one of the parties").

The district court erred as a matter of law by holding that a forum selection clause that selects a forum for post-award proceedings instead of the default under the Convention is, for that reason alone, invalid. SPA 19. Vacatur authority is provided by domestic arbitral law, which parties *choose* when they enter into an arbitration agreement. *See Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 23. As this Court made clear in *Zeevi*, parties to international arbitration agreements are free to choose their preferred forum for post-award proceedings, in lieu of the Convention's default rules. *See* 494 F. App'x at 112. This Court should vacate and remand.

## II. THE DISTRICT COURT ERRED BY DISMISSING THE PETITION FOR LACK OF SUBJECT-MATTER JURISDICTION UNDER THE FAA

The district court erred as a matter of law by holding that it lacked subject-matter jurisdiction under the FAA. Because the district court's decision proceeded from the erroneous premise that the parties could not contractually select the courts of New York to exercise primary jurisdiction over post-award proceedings, its conclusion that it lacked jurisdiction to entertain a petition for vacatur under the FAA was equally unsound.

The United States acceded to the New York Convention in 1970. 21 U.S.T. 2517. That same year, Congress amended the FAA to implement the Convention in the United States. *See* Pub L. No. 91-368, 84 Stat. 692–93 (1970) (codified at 9 U.S.C. §§ 201–08). Chapter 2 of the FAA confers original jurisdiction on federal

courts over "[a]n action or proceeding falling under the Convention," which is deemed "to arise under the laws and treaties of the United States," 9 U.S.C. § 203, mirroring the grant of federal-question jurisdiction in 28 U.S.C. § 1331, which confers jurisdiction on district courts over "civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331. Thus, § 203 of the FAA confers federal-question subject-matter jurisdiction on U.S. district courts over actions brought under the Convention.

Petitioners' application to vacate the Award is plainly an "action or proceeding falling under the Convention," and the Second Circuit has interpreted this language to "provide[] federal jurisdiction over actions to confirm *or vacate* an arbitral award that is governed by the Convention." *Scandinavian Reins. Co. Ltd.*, 668 F.3d at 71 (emphasis added); *see also Zurich Am. Ins. Co. v. Team Tankers A.S.,* 2014 WL 2945803, at *3 (S.D.N.Y. June 30, 2014) (same). Accordingly, the district court had original jurisdiction over this action under Section 203 of the FAA. For the reasons set forth in Part I, nothing in the text of the New York Convention operates to divest courts of subject-matter jurisdiction (or bestow it upon them).

The parties designated New York courts as having exclusive jurisdiction over post-award proceedings. JA 30–31. This case is therefore no different from any other in which subject-matter jurisdiction is conferred by Section 203 because one or more of the parties is foreign, but in which the FAA's standards for vacatur apply

25

because the award was rendered domestically. *See Scandinavian Reins. Co. Ltd.*, 668 F.3d at 71; *see also Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 102 n.1 (2d Cir. 2006) ("The FAA and the New York Convention work in tandem."); *CBF Industria de Gusa S/A*, 850 F.3d at 70 (holding since "the instant case involves non-U.S. citizens," it "properly falls under Chapter 2 of the FAA as well as under the New York Convention"); *Corporación AIC, SA*, 66 F.4th at 880 (holding FAA provides grounds for vacatur where New York Convention governs).

All authority under the New York Convention is conferred by the parties' arbitration agreement; that is clear enough as a matter of ordinary contract law. *See Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 405–06 (2d Cir. 2009) ("A dispute is arbitrable only if the parties contractually bind themselves to arbitrate it." (citations omitted)). Articles I and II of the Convention explain the prerequisites for the Convention's application, and parties may contract for when those prerequisites are satisfied. *See, e.g.*, *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 392 (2d Cir. 2011) (describing a bilateral investment treaty that specified particular acts constituting "an 'agreement in writing' for purposes of Article II of the New York Convention"). When parties select a forum in their arbitration agreement, unless they specify otherwise, it is presumed that the court will apply that forum's domestic arbitral law. *See Baker Marine (Nigeria) Ltd. v. Chevron*

*(Nigeria) Ltd.*, 191 F.3d 194, 197 (2d Cir. 1999); *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 21.

The New York Convention, standing alone, does not give or divest a federal court of subject-matter jurisdiction to vacate an arbitration award—it simply does not confer or divest subject-matter jurisdiction at all. *See supra* 20–21. Rather, subject-matter jurisdiction in U.S. courts is derived from domestic arbitral law—*i.e.*, Chapter 2 of the FAA. *See Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 21 ("We read Article V(1)(e) of the Convention to allow a court in the country under whose law the arbitration was conducted to apply domestic arbitral law, in this case the FAA, to a motion to set aside or vacate that arbitral award.").

Here, a federal court presented with a petition to vacate an arbitration award governed by the Convention has federal question subject-matter jurisdiction under the FAA. *See* 9 U.S.C. § 202 (explaining that a dispute involving a commercial arbitral award "falls under the Convention," unless the parties thereto are all citizens of the United States and the subject matter of the award has no relationship with foreign states); *id.* § 203 ("An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States."); *accord Scandinavian Reins. Co. Ltd.*, 668 F.3d at 71.

In arguing for jurisdiction in the Southern District of New York, Petitioners in no way rely on the New York choice-of-law provisions that caused the arbitration

to be governed by the substantive law of New York. *Cf. Steel Corp. of Philippines v. Int'l Steel Servs.*, 354 F. App'x 689, 693 (3d Cir. 2009) (cited by the district court at SPA 18; rejecting that Philippine procedural law applied because the parties' underlying contract was governed by Philippine law). Otherwise, Petitioners would be arguing for the application of the New York CPLR's grounds for vacatur.

Rather, the parties' selection of the courts of New York as the exclusive forum for proceedings concerning the arbitration contemplated that those courts would apply the default arbitral law applicable to their disputes in that forum—here, the FAA. *See* CA 44–45. The FAA presumptively applies to arbitration agreements related to "commerce" involving "foreign nations," unless the parties *expressly* agree otherwise. *See* 9 U.S.C. §§ 1–2; *cf. Resource Grp. Int'l Ltd. v. Chishti*, 91 F.4th 107, 111 (2d Cir. 2024) (where two foreign parties "expressly elected New York state law to govern any arbitration procedures and awards between them," it was "clear at the very least that the parties opted out of the FAA"). Because the forum selection clause in this case makes no reference to New York *state* arbitral law, the FAA remains the default arbitral law applicable to this dispute between foreign parties.

The district court erred in holding that the Convention's default rules deprived it of subject-matter jurisdiction under the FAA, improperly reasoning that the forum-selection clause sought to "expand[] the powers of [the] court beyond the confines

28

set by the New York Convention." SPA 23. The parties' contractual selection of New York as the exclusive forum for set-aside proceedings does not "expand" the powers of federal courts any more than a contract to sell securities does by bringing disputes arising under that contract within the ambit of federal securities law.

As a result of the district court's jurisdictional error, the court failed to interpret and give effect to the forum selection clause. Instead, the district court erroneously held that the forum-selection clause must be "interpreted in light of the New York Convention," since "it is presumed that the parties had such law in contemplation when the contract was made." SPA 19 (quoting *Ronnen v. Ajax Elec. Motor Corp.*, 88 N.Y.2d 582, 589 (1996)).[3] Contracts may be deemed unenforceable as illegal or violative of public policy, *see, e.g.*, *64th Assocs. LLC v. Manhattan Eye, Ear & Throat Hospital*, 2 N.Y.3d 585, 589–90 (2004), but no such argument was raised below. Further, the district court's circular reasoning ignores the contractual language on the basis that the parties must have intended their contract to conform to a legal rule of the district court's own invention.

---

[3] *Ronnen*, incidentally, rested its holding on the well-settled proposition that New York courts "have long and consistently ruled against any construction which would render a contractual provision meaningless or without force or effect," 88 N.Y.2d at 589, such that the parties' agreement was still implemented notwithstanding its arguable noncompliance with New York's Business Corporation Law, *see id.* at 591.

The district court was "not free to 'rewrite into a contract conditions the parties did not insert by adding or excising terms under the guise of construction.'" *Bank of N.Y. Mellon Tr. Co., N.A. v. Morgan Stanley Mortg. Cap., Inc.*, 821 F.3d 297, 307 (2d Cir. 2016) (quoting *Slamow v. Del Col*, 174 A.D.2d 725, 726 (2d Dep't 1991)); *see also Tutor Perini Corp. v. City of New York*, 225 A.D.3d 439, 439–40 (1st Dep't 2024). Yet that is precisely what the district court did, rejecting the plain language of the contract on the basis that Petitioners "fail[ed] to demonstrate that the New York Convention can be circumvented in this manner." SPA 19.

Even if this Court were to find the forum selection clause ambiguous—an issue not addressed below or briefed by the parties—the proper course would be to remand to the district court with instructions to consider extrinsic evidence on the parties' intent. *See JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397–99 (2d Cir. 2009) (vacating and remanding contract claim where "[g]iven the ambiguity, the parties were entitled to submit extrinsic evidence as to the intent with which they entered into the Agreement, and the court should have considered that evidence").

Ignoring the parties' exclusive choice-of-forum clause runs counter to decisions of this Court holding that arbitration agreements cannot deprive the parties of *any* ability to challenge arbitral awards in court, because to allow otherwise would turn the judicial imprimatur so essential to the enforcement of arbitral awards into a rubber stamp. *See, e.g.*, *Hoeft v. MVL Grp., Inc.*, 343 F.3d 57, 64 (2d Cir. 2003)

("[T]he integrity of the arbitration process could be compromised[] if parties could require that awards, flawed for any of the[] reasons [in FAA § 10(a)], must nevertheless be blessed by federal courts"); *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 591 (2d Cir. 2016) (holding contractual waiver of judicial review of arbitral award is "unenforceable," as it "would authorize a federal court to confirm the arbitral award while effectively preventing that court from ensuring that the award complied with the FAA"). By discarding the parties' mandatory forum selection clause, the district court deprived Appellants of *any* forum for vacatur— not only the one the parties bargained for.

*          *          *

Ultimately, the jurisdictional analysis is straightforward. The parties agreed by contract to submit post-arbitration proceedings to the exclusive jurisdiction of the New York courts. "An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial . . . falls under the Convention," unless that relationship is "entirely between citizens of the United States." 9 U.S.C. § 202. No party to these proceedings is a citizen of the United States. The district court acknowledged, as it had to, that federal courts have jurisdiction over vacatur petitions under the Convention. SPA 14. Those courts obtain subject-matter jurisdiction under Section 203 of the FAA; they apply the

grounds for vacatur set forth in Section 10(a); and they apply the same standard to their review regardless of the rules selected by the parties to govern the arbitration.

This Court should, therefore, vacate the district court's order and judgment dismissing the petition for lack of subject-matter jurisdiction. The district court had no warrant to ignore the parties' agreement and decline to exercise the jurisdiction it lawfully possesses.

## CONCLUSION

For the foregoing reasons, the Court should vacate the order and judgment of the district court and remand for further proceedings.

Dated: November 27, 2024  Respectfully submitted,

HOLWELL SHUSTER & GOLDBERG LLP

By: */s/ Scott M. Danner*
 Scott M. Danner
 Charlotte V. Baigent
 Patrick J. Woods

425 Lexington Ave, 14th Floor
New York, New York 10017
Telephone: (646) 837-5151
Facsimile: (646) 837-5150
sdanner@hsgllp.com
cbaigent@hsgllp.com
pwoods@hsgllp.com

Attorneys for Petitioners-Appellants

## <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because it contains 7,595 words, excluding those parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

The foregoing brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface, 14-point Times New Roman font, using Microsoft Word 365.

Dated:  November 27, 2024                    */s/ Scott M. Danner*
                                              Scott M. Danner

# SPECIAL APPENDIX

**i**

**SPECIAL APPENDIX**
**TABLE OF CONTENTS**

**Page**

Redacted Opinion and Order, filed July 23, 2024
  (Doc. 60) ................................................................ SPA-1

Judgment, dated July 30, 2024
  (Doc. 62) ................................................................ SPA-27

Relevant Statutes and Treaties .................................. SPA-28

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MOLECULAR DYNAMICS, LTD., SDBM LIMITED,
and CHAUNCEY CAPITAL CORP.,

Petitioners,

-v.-

SPECTRUM DYNAMICS MEDICAL LIMITED and
BIOSENSORS INTERNATIONAL GROUP LTD.,

Respondents.

---

22 Civ. 5167 (KPF)

**REDACTED OPINION
AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Molecular Dynamics, Ltd., SDBM Limited, and Chauncey Capital Corp.
(together, "Petitioners") seek an order from this Court vacating two awards
issued following an arbitration in Geneva, Switzerland, captioned *Spectrum
Dynamics Medical Limited* v. *Molecular Dynamics et al.*, Swiss Arbitration
Centre, No. 300438-2018 (the "Arbitration").

On May 18, 2022, after four years of proceedings, a tribunal at the Swiss
Arbitration Centre (the "Tribunal") issued a Partial Award (the "Partial Award")
in favor of Spectrum Dynamics Medical Limited ("Spectrum") and Biosensors
International Group Ltd. ("Biosensors," and together with Spectrum,
"Respondents"), concerning the parties' rights under four related contracts.
The Partial Award found that Petitioners had breached their licensing
agreement with Respondents. As a result, the Tribunal awarded Spectrum
$▮▮▮▮▮▮ plus interest in restitution and awarded Respondents
approximately $▮▮▮▮▮ in costs and attorneys' fees. In a Final Award dated
July 8, 2022, the Tribunal awarded Respondents additional costs and

attorneys' fees (the "Final Award," and together with the Partial Award, the "Awards").

Petitioners now seek to vacate the Awards pursuant to, among other things, the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-16, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention" or the "Convention"), *id.* §§ 201-208.  In response, Respondents challenge the Court's authority to vacate the Awards in the first instance.  For the reasons set forth in the remainder of this Opinion, the Court dismisses the case for lack of subject matter jurisdiction.

## BACKGROUND[1]

### A.    Factual Background

#### 1.    The Parties and the Governing Agreements

Petitioners are various companies directly or indirectly controlled by Professor Shlomo Ben Haim.  (Resp. Opp. 5).  Petitioner SDBM Ltd. ("SDBM") developed and later sold scanners for nuclear medicine — a branch of medicine that uses advanced techniques for medical imaging.  (*Id.*).  Petitioner Molecular Dynamics, Ltd. ("MD") is a joint-venture company formed in 2013 by

---

[1]    The facts set forth in this Opinion are drawn from the parties' submissions in connection with Petitioners' motion to partially vacate the arbitral award.  The Court primarily sources facts from Petitioners' Amended Petition (Dkt. #27 ("AP")); the Declarations of Scott M. Danner (Dkt. #14 ("Danner Decl.")), Anna Veronique Schlaepfer (Dkt. #34 ("Schlaepfer Decl.")), and Frederick L. Whitmer (Dkt. #57 ("Whitmer Decl.")). The Court also relies, as appropriate, on certain of exhibits attached thereto ("[Name] Decl., Ex. [ ]").

For ease of reference, the Court refers to Petitioners' memorandum of law in support of their motion to vacate as "Pet. Br." (Dkt. #9); to Respondents' memorandum of law in opposition to Petitioners' motion as "Resp. Opp." (Dkt. #32); and to Petitioners' reply memorandum of law as "Pet. Reply" (Dkt. #41).

Respondent Bionsensors and Petitioners SDBM and Chauncey Capital Corp. ("Chauncey"). (AP ¶ 13; Pet. Br. 4-5). Biosensors, in turn, is a Singapore-based company that develops, manufactures, and licenses technologies used in cardiological care, which company was acquired in 2017 by Respondent Spectrum. (Resp. Opp. 5; AP ¶ 18).

On May 12, 2013, Biosensors signed an asset purchase agreement with SDBM, resulting in Biosensors acquiring substantially all of SDBM's assets and intellectual property rights. (AP ¶ 12; Resp. Opp. 5). On October 15, 2013, Biosensors entered into four agreements with SDBM and Chauncey — the Joint Venture Agreement, the License Agreement, the Loan Agreement, and the Assistance Agreement (together, the "Agreements") — the result of which was to create a joint venture company, MD, for the purpose of developing a camera in the nuclear medicine field. (AP ¶ 13; Resp. Opp. 5). The Joint Venture Agreement governed the formation of MD and granted it exclusive license to the intellectual property that Biosensors had earlier acquired from SDBM. (AP ¶ 15; Pet. Br. 4-5). The License Agreement defined Biosensors' and MD's respective "fields of use" — i.e., each party's permitted uses of shared intellectual property. (AP ¶ 14). The Loan Agreement and the Assistance Agreement governed loans that Biosensors and Chauncey were to provide to MD, as well as engineering assistance that Biosensors was to provide to MD. (Id. ¶ 16; Pet. Br. 4-5).

All of the Agreements recite that they are governed in accordance with the laws of New York without regard to principles of conflicts of law, and that

3

SPA-4

any disputes relating to the Agreements are to be resolved through arbitration seated in Geneva, Switzerland, under the "Swiss Rules of International Arbitration of the Swiss Chambers Arbitration Institution."  (AP ¶ 19).  One of the Agreements — the License Agreement — contains a forum selection clause that provides:

> On matters of injunctive relief, the parties agree that the courts of New York, New York shall have non-exclusive jurisdiction and are competent courts for the purposes thereof, and on matters of concerning the Chosen Arbitration, the courts of New York, New York will have exclusive jurisdiction thereupon.

(*Id.* ¶¶ 19-20; Danner Decl., Ex. 3 (License Agreement) § 9 (the "Forum Selection Clause")).

### 2.   The Parties' Disputes and the Arbitration

Beginning in 2015, disputes began to arise between the parties regarding their contractual obligations under the Agreements.  (AP ¶ 22).  The disputes persisted, leading Spectrum to terminate the License Agreement on August 18, 2017.  (*Id.*).

On April 18, 2018, Spectrum filed its Notice of Arbitration with the Swiss Arbitration Centre (the "Centre").  (AP ¶ 23; Danner Decl., Ex. 10).  It claimed that "MD breached the License Agreement by repeatedly failing to notify and deliver to Biosensors any new IP and improvements, and by failing to reasonably cooperate with Biosensors' requests to provide such information." (Danner Decl., Ex. 10 ¶ 31(b)(ii)(1)).  Spectrum sought a declaration that it had properly terminated the License Agreement and that it was therefore able to develop and market its camera without restriction.  (*Id.* ¶ 31(b)(iii)).  On

August 16, 2018, Petitioners filed their answer and counterclaims, adding Biosensors as a party and claiming, among other things, that Respondents had breached the Licensing Agreement by developing a nuclear medicine device to have cancer-related applications, violating Petitioners' "field of use." (AP ¶ 14; Pet. Br. 8).

The Arbitration was held before a three-person panel from April 2018 to May 2022, during which time Petitioners claim that a series of irregularities occurred. (AP ¶¶ 25-26; Pet. Br. 8). The claimed irregularities include fraudulent and perjurious conduct on the part of Respondents; the resignation of the presiding arbitrator in October 2021 in the wake of allegations of bias and conflict of interest; and the Tribunal's refusal to reopen the proceedings after Petitioners submitted what they alleged to be newly discovered evidence. (AP ¶ 26).

Despite Petitioners' protests, the Tribunal issued the Partial Award to the parties on May 20, 2022. (AP ¶ 26). The Partial Award found that Petitioners had improperly invaded Respondents' "field of use" by developing their own nuclear medicine device to incorporate cardiac-related functionality in 2014, and that, as a result, Respondents were released from their contractual obligations thereafter. (Resp. Br. 12; Danner Decl., Ex. 6 (Partial Award) § 12). The Partial Award further ordered Petitioners to pay restitution in the amount of $███████ stemming from their breach, plus $██████ in Respondents' costs, including attorneys' fees. (AP ¶ 27; Resp. Br. 13). On July 8, 2022, the Tribunal issued the Final Award requiring Petitioners to pay a further

5

CHF ███ and $ ███ of Respondents' costs. (AP ¶ 28; *id.*, Ex. A (Final Award) § 12).

**B.    Procedural Background**

Petitioners commenced the instant action on June 20, 2022, by filing a Petition to Vacate an Arbitral Award and Enter Judgment Thereon pursuant to Section 10 of the FAA, 9 U.S.C. § 10 (the "Petition"). (Dkt. #1). The Petition sought to vacate the Partial Award. On that same day, Petitioners also filed a memorandum of law in support of the Petition. (Dkt. #9). After the Petition was filed, on July 8, 2022, the Tribunal issued the Final Award. Pursuant to the parties' stipulation (Dkt. #25), Petitioners submitted an Amended Petition to seek vacatur of both the Partial Award and Final Award (Dkt. #27).

Respondents filed a memorandum of law in opposition to the Petition on August 18, 2022. (Dkt. #32). On August 30, 2022, Petitioners filed a letter motion for an extension of time to file a reply. (Dkt. #37). The motion was granted on August 31, 2022, and a new filing deadline for the reply was set for October 13, 2022. (Dkt. #39). Petitioners filed their reply on October 13, 2022. (Dkt. #41).

In addition to their reply, Petitioners filed a letter motion for leave to conduct limited discovery regarding Petitioners' motion to vacate. (Dkt. #46). Respondents filed a response opposing Petitioners' motion seeking discovery on October 20, 2022. (Dkt. #50). The Court denied Petitioners' motion seeking discovery, in part because the issues of fraud on which they sought discovery had already been considered in the course of the Arbitration. (Dkt. #55).

## DISCUSSION

**A.    Applicable Law**

      **1.    The New York Convention**

            **a.    Overview**

The Arbitration at issue in this action arises under the New York Convention, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38. The New York Convention "was enacted and opened for signature in New York City on June 10, 1958, and entered into force in the United States after ratification on December 29, 1970." *Yusuf Ahmed Alghanim & Sons* v. *Toys "R" Us, Inc.*, 126 F.3d 15, 18 n.1 (2d Cir. 1997), *cert. denied*, 522 U.S. 1111 (1998). Chapter 2 of the FAA, 9 U.S.C. §§ 201-208, implements the United States' obligations under the New York Convention. *See Scherk* v. *Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974).

"The New York Convention only applies to 'the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought' and to 'arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought.'" *CBF Industria de Gusa S/A* v. *AMCI Holdings, Inc.*, 850 F.3d 58, 70 (2d Cir. 2017) (quoting N.Y. Conv. art. I(1)). According to the *Restatement (Third) of the U.S. Law of International Commercial Arbitration*, an arbitral award is "made" in the country of the "arbitral seat," which is "the jurisdiction designated by the parties or by an entity empowered to do so on their behalf to be the juridical home of the arbitration."

7

RESTATEMENT (THIRD) OF THE U.S. LAW OF INT'L COMMERCIAL ARBITRATION § 1-1 (s),

(aa) (Am. Law Inst., Tentative Draft No. 2, 2012).  Thus, the New York

Convention applies to

> arbitral awards made in a foreign country that a party
> seeks to enforce in the United States (known as foreign
> arbitral awards), to arbitral awards made in the United
> States that a party seeks to enforce in a foreign country,
> and to nondomestic arbitral awards that a party seeks
> to enforce in the United States.

*CBF Industria*, 850 F.3d at 70 (internal quotation marks omitted).

As discussed in greater detail below, the arbitral awards that Petitioners

seek to vacate here were "made" in Switzerland.  The parties set the seat of the

Arbitration as Geneva, Switzerland (*see* Whitmer Decl., Ex. 22 (Procedural

Order No. 3) § 8.1 (stating "[t]he legal seat of the arbitration shall be Geneva,

Switzerland")), and the Awards were rendered under Swiss arbitral law (*see*

Partial Award 3; Final Award 3).

### b.   Primary and Secondary Jurisdiction Under the New York Convention

Under the New York Convention, a "competent authority" in a country

under the laws of which the award is "made" "is said to have *primary*

jurisdiction over the arbitration award."  *Karaha Bodas Co., L.L.C.* v.

*Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 115

n.1 (2d Cir. 2007) (internal quotation marks omitted) (emphasis in original).

"The [New York] Convention specifically contemplates that the state in which,

or under the law of which, [an] award is made, will be free to set aside or

modify an award in accordance with its domestic arbitral law and its full

panoply of express and implied grounds for relief." *Yusuf Ahmed*, 126 F.3d at
23 (citing N.Y. Conv. art. V(1)(e)); *see also, e.g., Scandinavian Reinsurance Co.*
v. *Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012)
("*Scandinavian Re*") ("Because the Award in the St. Paul Arbitration was
entered in the United States, however, the domestic provisions of the FAA also
apply, as is permitted by Articles V(1)(e) and V(2) of the New York
Convention.").

        In contrast, "[a]ll other signatory States are *secondary* jurisdictions, in
which parties can only contest whether that State should *enforce* the arbitral
award." *Karaha Bodas*, 500 F.3d at 115 n.1 (citation omitted) (emphases in
original).  This process of reducing a foreign arbitral award to a judgment is
referred to as "recognition and enforcement."  N.Y. Conv. arts. III, IV, V.
"Recognition" is the determination that an arbitral award is entitled to
preclusive effect; "enforcement" is the reduction to a judgment of a foreign
arbitral award.  *See* RESTATEMENT (THIRD) OF THE U.S. LAW OF INT'L COMMERCIAL
ARBITRATION § 1-1(l), (z) (Am. Law Inst., Tentative Draft No. 2, 2012).
"Recognition" and "enforcement" occur together, as one process, under the New
York Convention.  N.Y. Conv. arts. III, IV, V.

        The FAA implements this scheme through Section 207, which provides
that any party may, "[w]ithin three years after an arbitral award ... is made, ...
apply to any court having jurisdiction under this chapter for an order
confirming the award."  9 U.S.C. § 207; *see also CBF Industria*, 850 F.3d at 72
("Read in context with the New York Convention, it is evident that the term

'confirm' as used in Section 207 is the equivalent of 'recognition and enforcement' as used in the New York Convention for the purposes of foreign arbitral awards." (internal footnote omitted)).  Additionally, Chapter 2 of the FAA provides that "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention" at Article V.  *CBF Industria*, 850 F.3d at 72.

Thus, under the New York Convention, courts in countries with secondary jurisdiction may only decline to *enforce* an arbitral award, and do so based "only on the limited grounds specified in Article V [of the New York Convention]."  *See Karaha Bodas*, 500 F.3d at 115 n.1 ("Consequently, even though courts of a primary jurisdiction may apply their own domestic law when evaluating an attempt to annul or set aside an arbitral award, courts in countries of secondary jurisdiction may refuse enforcement only on the limited grounds specified in Article V."); *see also OJSC Ukrnafta* v. *Carpatsky Petroleum Corp.*, 957 F.3d 487, 497 (5th Cir. 2020) ("A secondary jurisdiction assesses only whether it can domestically enforce the award; it cannot 'annul' the award."); *Int'l Standard Elec. Corp.* v. *Bridas Sociedad Anonima Petrolera, Indus. y Comercial*, 745 F. Supp. 172, 178 (S.D.N.Y. 1990) ("[S]ince the situs, or forum of the arbitration is Mexico, and the governing procedural law is that of Mexico,

only the courts of Mexico have jurisdiction under the Convention to vacate the award.").[2]

### 2.    The Federal Arbitration Act

Petitioners here seek to vacate the Awards, not under the New York Convention, but rather under domestic law, including Section 10 of the FAA. 9 U.S.C. § 10.  Under the FAA, there are four statutory grounds for vacatur:

> (i)    where the award was procured by corruption, fraud, or undue means;
>
> (ii)    where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (iii)    where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (iv)    where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Id.*  The burden of proving that an arbitral award must be vacated rests on the party seeking vacatur, who "must clear a high hurdle."  *Scandinavian Re*, 668 F.3d at 72 (citing *Stolt-Nielsen S.A.* v. *AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)).  "[A] district court will enforce the award as long as there is a

---

[2]    Article V of the New York Convention describes the circumstances in which "[r]ecognition and enforcement of the award may be refused" by a court located in a country sitting in secondary jurisdiction.  N.Y. Conv. art. V.  As relevant here, Article V(1)(e) stipulates that a court sitting in secondary jurisdiction can refuse to recognize and enforce an arbitral award where "[t]he award has … been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made."  *Id.* at V(1)(e).

barely colorable justification for the outcome reached." *Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Tr.*, 729 F.3d 99, 103-04 (2d Cir. 2013) (internal quotation marks omitted).

In addition, the Second Circuit has held that a court may vacate an award if the arbitrator "has acted in manifest disregard of the law," *Porzig* v. *Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007), or "where the arbitrator's award is in manifest disregard of the terms of the parties' relevant agreement," *Schwartz* v. *Merrill Lynch & Co., Inc.*, 665 F.3d 444, 452 (2d Cir. 2011) (alterations and internal quotation marks omitted). However, a court may vacate on those bases only in "those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." *T.Co Metals, LLC* v. *Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010).

### 3.  Summary Judgment Under Federal Rule of Civil Procedure 56

Courts treat an application "to confirm or vacate an arbitral award as akin to a motion for summary judgment." *City of New York* v. *Mickalis Pawn Shop, LLC*, 645 F.3d 114, 136 (2d Cir. 2011) (quoting *D.H. Blair & Co., Inc.* v. *Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006).[3]  A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

---

[3]     The Court notes that, here, the parties have not structured their briefing as motions for summary judgment — and, for the sake of efficiency, were not asked to refile their submissions to conform with Rule 56 of the Federal Rules of Civil Procedure. Nevertheless, the Court still construes the parties' submissions through the prism of Rule 56.

R. Civ. P. 56(a).  Thus, "[a] motion for summary judgment may properly be granted ... only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." *Rogoz* v. *City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (quoting *Kaytor* v. *Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)).  "[A] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Royal Crown Day Care LLC* v. *Dep't of Health & Mental Hygiene of City of N.Y.*, 746 F.3d 538, 544 (2d Cir. 2014) (quoting *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "[A] dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Negrete* v. *Citibank, N.A.*, 237 F. Supp. 3d 112, 122 (S.D.N.Y. 2017) (quoting *Liberty Lobby*, 477 U.S. at 248).  Petitioners' motion must "be examined on its own merits, and ... all reasonable inferences must be drawn against the party whose motion is under consideration." *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks and alteration omitted) (quoting *Morales* v. *Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

**B.    The Court Lacks Jurisdiction to Vacate the Awards**

Among other bases, Petitioners seek to vacate the Awards under Section 10 of the FAA, claiming that (i) the Awards were secured by fraud and tainted by evident partiality (Pet. Br. 23-31); (ii) the arbitrators committed misconduct (*id.* at 31-34); and (iii) the arbitrators manifestly disregarded the law (*id.* at 34-38).  However, Respondents challenge the threshold issue of the Court's

13

jurisdiction to vacate the Awards. In this regard, Respondents argue that, because the Awards were made in Switzerland under Swiss law, "this litigation presents a classic case of a foreign arbitral award," *CBF Industria*, 850 F.3d at 71, that cannot be vacated in the United States. (Resp. Opp. 14). For the reasons that follow, the Court agrees, and concludes in consequence that it lacks jurisdiction to reach the underlying merits of Petitioners' vacatur claims. *See generally Novel Energy Sols., LLC* v. *Pine Gate Renewables, LLC*, No. 23-1191, 2024 WL 1364702, at *2 (2d Cir. Apr. 1, 2024) (summary order) ("Lacking subject-matter jurisdiction, [a] District Court [does] not have the power to reach the merits [of a claim].").

### 1.    Vacatur Jurisdiction Generally

"[N]either the [New York] Convention nor its enabling statute, 9 U.S.C. §§ 201-08, grant[s vacatur] power with regard to [awards governed by the New York Convention]." *Zeiler* v. *Deitsch*, 500 F.3d 157, 165 n.6 (2d Cir. 2007) (holding that district court improperly applied Article V(1)(d) of the Convention instead of Section 10 of the FAA to vacate an arbitral award arising under the laws of the United States); *see also Lander Co., Inc.* v. *MMP Invs., Inc.*, 107 F.3d 476, 478 (7th Cir. 1997) ("The New York Convention contains no provision for seeking to vacate an award."); *Gonsalvez* v. *Celebrity Cruises, Inc.*, 935 F. Supp. 2d 1325, 1330-31 (S.D. Fla.) (noting that "the Convention does not even authorize actions to vacate arbitration awards"), *aff'd*, 750 F.3d 1195 (11th Cir. 2013).

14

Under the New York Convention, only a "competent authority" of the country in which, or under the law of which, an award was made, may vacate or annul the award under domestic law. *See* N.Y. Conv., art. V(1)(e). Thus, while "courts of a primary jurisdiction may apply their own domestic law" — such as the FAA — "when evaluating an attempt to annul or set aside an arbitral award," "courts in countries of secondary jurisdiction may refuse *enforcement* only on the limited grounds specified in Article V." *Karaha Bodas*, 500 F.3d at 115 n.1 (emphasis added).

"Whether a tribunal is 'competent' under Article V(1)(e) [of the New York Convention] to entertain an action to set aside an arbitral award is an inquiry that goes to that forum's subject-matter jurisdiction to hear a case." *Int'l Trading & Indus.* v. *Dyncorp Aerospace Tech.*, 763 F. Supp. 2d 12, 23 (D.D.C. 2011); *see also Gulf Petro Trading Co.* v. *Nigerian Nat'l Petroleum Corp.*, 512 F.3d 742, 747 (5th Cir. 2008) ("[A] court sitting in secondary jurisdiction lacks subject matter jurisdiction over claims seeking to vacate, set aside, or modify a foreign arbitral award."). For the reasons that follow, Petitioners fail to demonstrate that the United States, and not Switzerland, constitutes the "primary jurisdiction" in this arbitral action, and thus has jurisdiction to vacate the Awards.

**2.    Switzerland Is the Primary Jurisdiction for the Awards**

As an initial matter, the parties do not appear to contest that Switzerland has primary jurisdiction in this action, as the Arbitration was seated in Switzerland and governed by Swiss law. (*See* Resp. Opp. 14 ("[T]he Awards

15

were made in Switzerland under Swiss law[.]"); Pet. Reply 11 (identifying the Arbitration as conducted in Switzerland and governed by Swiss arbitral law)). Under the New York Convention, the country under the laws of which the award is made "is said to have *primary* jurisdiction over the arbitration award." *Karaha Bodas*, 500 F.3d at 115 n.1 (emphasis in original); *see also Esso Expl. & Prod. Nigeria Ltd.* v. *Nigerian Nat'l Petroleum Corp.*, 40 F.4th 56, 62 (2d Cir. 2022) (identifying the primary jurisdiction as simply "the country in which an arbitral award is rendered"); *accord Iraq Telecom Ltd.* v. *IBL Bank S.A.L.*, 597 F. Supp. 3d 657 (S.D.N.Y. 2022), *aff'd*, No. 22-832, 2023 WL 2961739 (2d Cir. Apr. 17, 2023) (summary order).

In this case, there is no question that the arbitral seat was in Switzerland, and the Awards were made under Chapter 12 of the Swiss Federal Code on Private International Law ("PILA"), the procedural arbitration law that governs arbitrations held in Switzerland.  (Pet. Br. 2; Resp Opp. 17-21).[4]  The Tribunal, in issuing the Awards, explicitly recited that they were rendered under Swiss law.  (*See* Partial Award 3 ("The arbitral tribunal makes this award pursuant to the mandatory provisions of [PILA] and Article 31(1) of the Swiss Rules of International Arbitration ('Rules').."); Final Award 3 (same)).

---

[4]     While in theory, it is possible for an arbitration to be governed by the procedural law of a country other than the one in which the arbitration takes place, in practice it is exceedingly rare for this to occur.  *See, e.g., Yusuf Ahmed Alghanim & Sons* v. *Toys "R" Us, Inc.*, 126 F.3d 15, 21 n.3 (2d Cir. 1997) ("Although most courts and commentators assume that Article V(1)(e) is applicable to the state in which the award is rendered, we note that Article V(1)(e) specifically contemplates the possibility that an award could be rendered in one state, but under the arbitral law of another state ....  This situation may be so rare as to be a dead letter."), *cert. denied*, 522 U.S. 1111 (1998).  No party to this action asserts that this case presents this exceedingly rare situation.

16

Additionally, the parties consented to Swiss procedural law governing the Arbitration. (*See* Procedural Order No. 3 § 12.1 ("Subject to the relevant provisions of the Swiss Rules and the PILA, the Tribunal will endeavour to render an Award.")). The Tribunal also confirmed during the proceedings that Swiss arbitral law governed the Arbitration. (Whitmer Decl., Ex. 23 § 3 ("[Respondents] propose to confirm Geneva as the legal seat of the arbitration. [Petitioners] agree[] …. [Respondents] propose to confirm that Article 176 PILA applies to the arbitration. [Petitioners] agree[].")). Because Swiss procedural law governed the Arbitration, the Awards arose "under the law" of Switzerland. N.Y. Conv. art. V(1)(e); *see also M&C Corp.* v. *Erwin Behr GmbH & Co.*, 87 F.3d 844, 848 (6th Cir. 1996) (holding that "under the law of which" in Article V(1)(e) "'refers exclusively to procedural and not substantive law, and more precisely, to the regimen or scheme of arbitral procedural law under which the arbitration was conducted'" (quoting *Int'l Standard Elec. Corp.*, 745 F. Supp. at 178)); *Jolen, Inc.* v. *Kundan Rice Mills, Ltd.*, No. 19 Civ. 1296 (PKC), 2019 WL 1559173, at *3 (S.D.N.Y. Apr. 9, 2019) ("The law 'under which' the award is made for purposes of Article V(1)(e) is the procedural law of the arbitration.").

This evidence, together with the "strong presumption that designating the place of the arbitration also designates the law under which the award is made[,]" leads the Court to conclude that the Awards were made under Swiss procedural law and, therefore, that Switzerland has "primary jurisdiction over the arbitration award." *Karaha Bodas Co.* v. *Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 292 (5th Cir. 2004); *see also*

17

*Steel Corp. of the Phil.* v. *Int'l Steel Servs., Inc.*, 354 F. App'x 689, 693 (3d Cir. 2009) (unpublished decision) (holding that clause providing that Philippine substantive law governed enforcement of contract did not rebut strong presumption that Singaporean procedural law governed arbitration that occurred in Singapore). Accordingly, Switzerland has the exclusive authority to vacate or annul the Awards. *See* N.Y. Conv. art. V(1)(e); *see also* ALBERT JAN VAN DEN BERG, THE NEW YORK ARBITRATION CONVENTION OF 1958: TOWARDS A UNIFORM JUDICIAL INTERPRETATION 350 (1981) (stating that Articles V and VI of the Convention "unequivocally lay down the principle that the court in the country in which, or under the law of which, the award was made has the exclusive competence to decide on the action for setting aside the award" (emphasis removed)).

### 3. Petitioners Fail to Demonstrate That the United States Has Primary Jurisdiction over the Awards

Undaunted, Petitioners assert that the Forum Selection Clause contained in Section 9 of the Licensing Agreement confers jurisdiction to vacate the Swiss Awards on New York courts. (Pet. Reply 10-12). To review, the Clause states that "the seat of the [arbitration] shall be Geneva Switzerland," and that "on matters of concerning the [arbitration], the courts of New York, New York will have exclusive jurisdiction thereupon." (License Agreement § 9).

As it happens, the language of the Forum Selection Clause specifies neither that it applies to applications to vacate an award, nor that the United States is intended to serve as the primary jurisdiction for the Arbitration. Nevertheless, Petitioners contend that "[b]y specifying [] two 'exclusive'

18

jurisdictions," in the Licensing Agreement, the parties expressed their intention to bifurcate primary jurisdiction authority: "Swiss arbitral law would govern the conduct of the arbitration, while U.S. arbitral law would govern any post-award proceedings, including to vacate." (Pet. Reply 11).

Petitioners fail to demonstrate that the New York Convention can be circumvented in this manner. Under New York law, which governs interpretation of the License Agreement, "the law in force at the time an agreement is entered into becomes as much a part of the agreement as though it were expressed or referred to therein, for it is presumed that the parties had such law in contemplation when the contract was made and the contract will be construed in the light of such law." *Ronnen* v. *Ajax Elec. Motor Corp.*, 88 N.Y.2d 582, 589 (1996) (alterations and internal quotation marks omitted). The Forum Selection Clause must therefore be interpreted in light of the New York Convention.

While the New York Convention specifically contemplates that a competent authority in the state in which, or under the law of which, the award is made — in this case, Switzerland — "will be free to set aside or modify an award in accordance with its domestic arbitral law," *Yusuf Ahmed*, 126 F.3d at 23 (citing N.Y. Conv. art. V(1)(e)), all other states have only "limited authority" to review arbitral awards, *Karaha Bodas*, 500 F.3d at 115 n.1 ("[C]ourts in countries of *secondary* jurisdiction may [only] refuse [to] enforce[] [an arbitral award] ... on the limited grounds specified in Article V." (emphasis in original)). Thus, while it is well-settled that U.S. courts can apply the

19

domestic provisions of the FAA to vacate an award arising under the New York Convention but entered in the United States, *see, e.g.*, *Scandinavian Re*, 668 F.3d at 71 (finding that Article V of the New York Convention permitted U.S. courts to apply Section 10 of the FAA to vacate an arbitral award entered in the United States); *Zeiler*, 500 F.3d at 165 n.6 (explaining that U.S. courts can apply "Chapter 1 of the FAA to vacate arbitration awards entered in the United States"), Petitioners have identified no decision from a U.S. court in the 54 years since this country acceded to the New York Convention — and the Court is aware of none — holding that a U.S. court can vacate an award made in a foreign state under foreign law.

Indeed, all the cases Petitioners cite in support of their argument involve arbitrations that occurred in the United States pursuant to U.S. procedural law. *See, e.g.*, *Scandinavian Re*, 668 F.3d at 71 (finding domestic provisions of the FAA apply, as is permitted by Articles V(1)(e) and V(2) of the New York Convention, because the arbitration was "entered in the United States"); *Zurich Am. Ins. Co.* v. *Team Tankers A.S.*, No. 13 Civ. 8404 (WHP), 2014 WL 2945803, at *3 (S.D.N.Y. June 30, 2014) ("Because the award was entered in the United States, the domestic provisions of the FAA also apply."), *aff'd*, 811 F.3d 584 (2d Cir. 2016); *see also Yusuf Ahmed*, 126 F.3d at 21 (finding that district court can apply the FAA to vacate a arbitral award governed by the New York Convention only where "the arbitral award in this case was rendered in the United States"); *Lander*, 107 F.3d at 478-79 (finding that the district court erred in dismissing vacatur petition for lack of jurisdiction where the

arbitration was entered in New York City pursuant to U.S. procedural law); *Gonsalvez*, 935 F. Supp. 2d at 1330-31 (applying the FAA's statute of limitation to a petition to vacate an arbitral award arising out of arbitration that occurred in Miami, Florida).

The one case Petitioners cite in support of their assertion that a forum selection clause can convey vacatur authority is inapposite.  (Pet. Br. 22 n.2 (citing *Zeevi Holdings Ltd.* v. *Republic of Bulgaria*, 494 F. App'x 110, 113 (2d Cir. 2012) (summary order)).  In *Zeevi*, the Second Circuit affirmed the district court's decision to enforce a forum selection clause stipulating that an arbitral award could only be *enforced* in Bulgaria, even though the arbitration occurred in France and was governed by French law.  *See* 494 F. App'x at 113 ("Here, the agreement has two forum selection clauses, the first of which requires the parties to arbitrate disputes in Paris, as was done here; and the second of which provides that '[t]he execution of an award against the Seller may be conducted only in Bulgaria in accordance with the provisions of Bulgarian law.'").  Contrary to Petitioners' contentions, however, whether parties can contract away the right to invoke a secondary jurisdiction's undisputed authority under the New York Convention to *enforce* a foreign award is a far different question from whether parties can convey to a secondary jurisdiction the authority to *vacate* a foreign award — an authority that it does not otherwise have.

After all, the New York Convention readily permits parties to seek enforcement of an arbitral award in the courts of any country that is a

signatory to the New York Convention.  *See* N.Y. Conv. art. III ("Each Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon[.]"); *see also Karaha Bodas*, 500 F.3d at 115 n.1 ("All [] signatory States [other than the primary jurisdiction] are *secondary* jurisdictions, in which parties can only contest whether that State should enforce the arbitral award." (emphasis in original)).  This flexibility makes sense in light of the Convention's goal of "encourag[ing] the recognition and enforcement of commercial arbitration agreements in international contracts and ... unify[ing] the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk*, 417 U.S. at 520 n.15 (citing *Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, S. Exec. Doc. E, 90th Cong., 2d Sess. (1968)).  Thus, as recognized by the district court in *Zeevi*, "[a]n American district court deciding a petition to confirm a foreign arbitral award may ... enforce a forum selection clause in the underlying agreement," because it does not "contraven[e] the New York Convention's purpose of 'encouraging the *recognition and enforcement* of commercial arbitration agreements in international contracts.'" *Zeevi Holdings Ltd.* v. *Republic of Bulgaria*, No. 09 Civ. 8856 (RJS), 2011 WL 1345155, at *3-4 (S.D.N.Y. Apr. 5, 2011) (quoting *Scherk*, 417 U.S. at 520 n.15) (alterations omitted) (emphasis added), *aff'd*, 494 F. App'x 110 (2d Cir. 2012) (summary order).

In contrast, Petitioners' proffered interpretation of the Forum Selection Clause contravenes the New York Convention, which reserves the power to vacate foreign awards to courts sitting in primary jurisdiction alone.  *See Gulf Petro Trading Co.*, 512 F.3d at 747 ("[A]lthough the Convention permits a primary jurisdiction court to apply its full range of domestic law to set aside or modify an arbitral award, secondary jurisdiction courts may only refuse or stay enforcement of an award on the limited grounds specified in Articles V and VI.").  Put simply, expanding the powers of a court beyond the confines set by the New York Convention is not within the parties' power, as there is a "basic difference between the court's power and the litigant's convenience," and no contract can convey to the court the "power to adjudicate" matters which it otherwise could not.  *See Neirbo Co.* v. *Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 167-68 (1939); *see also Int'l Standard Elec. Corp.*, 745 F. Supp. at 182 ("[T]he [New York] Convention … would [] be [] undermined, if judges sitting in [secondary jurisdiction], were [able] to [inquire] into whether the law the arbitrators said they were using was … properly applied.  The plain answer is that the Convention does not … contemplate such a chaos."); *Dyncorp*, 763 F. Supp. 2d at 23 ("[I]t is axiomatic that parties cannot confer subject-matter jurisdiction on a tribunal by way of consent.").[5]

---

[5]     Petitioners advert to the decision in *Molecular Dynamics Ltd.* v. *Spectrum Dynamics Medical Ltd.*, No. 22 Civ. 4332 (PAE), 2022 WL 2901559 (S.D.N.Y. July 22, 2022), to suggest that a court in this District has already "adopted Petitioners' interpretation" of the Forum Selection Clause.  (Pet. Reply 5).  Using an analysis similar to that used for Petitioners' arguments under *Zeevi*, *supra*, the Court finds that this argument also fails. In *Molecular Dynamics Ltd.*, Petitioners sought to enjoin Respondents from enforcing the arbitral award outside New York.  No. 22 Civ. 4332, Dkt. #40 (transcript of proceedings of June 10, 2022).  There, Judge Engelmayer initially granted the injunction, finding

23

*International Trading & Industrial Investment Company* v. *Dyncorp Aerospace Technology*, 763 F. Supp. 2d 12 (D.D.C. 2011), is informative on this point. In *Dyncorp*, the petitioner sought to confirm an arbitral award rendered in France under French law, despite the fact that the award had previously been vacated by a Qatari court pursuant to what the respondent claimed was a forum selection clause conferring vacatur authority on Qatari courts. *See id.* at 17-18. Ruling in favor of petitioner, the *Dyncorp* court held that

> the Court is obligated to confirm the Award under Article V(1)(e) unless it can be shown that "the award ... has been set aside ... by a competent authority of the country in which, or under the law of which, an arbitral award is made." No such showing has been made by Respondent, [despite the successful showing that a Qatari court had purported to vacate the award.]

*Id.* at 24 (alterations omitted). The *Dyncorp* court made this finding in part based on its conclusion that the forum selection clause, which stipulated that "Qatari law governed the resolution of any substantive questions in the case[,]" 763 F. Supp. 2d at 17, did not give Qatari tribunals the power to vacate the award. That is, "the only competent tribunals empowered under the New York Convention to set aside the Award [were] those located in France, not Qatar[,]" inasmuch as "the seat of the arbitration was Paris, France, [and the

---

that the parties had "bargained for the exclusive jurisdiction of the courts of New York[,]" with respect to the issue of *enforceability*. *See id.* at 14:8-9. Thus, similar to the parties in *Zeevi*, Judge Engelmayer held that the parties contracted to require all proceedings concerning the exclusive *enforcement* or *nonenforcement* of the Awards to occur in New York, New York, *see Molecular Dynamics Ltd.*, 2022 WL 2901559, at *5, but said nothing with regard to modification or vacatur of the Awards.

arbitration was governed by the [International Chamber of Commerce (a French business organization that administers arbitrations)] Rules." *Id.* at 21-22.

In sum, in the absence of any case law suggesting that parties can confer vacatur authority upon courts in countries different from the country under whose procedural laws the arbitration was conducted, and in light of case law suggesting that such authority is affirmatively disallowed by the New York Convention, the Court finds that it lacks subject matter jurisdiction over Petitioners' request that it vacate the Awards. *See Gulf Petro Trading Co.*, 512 F.3d at 747 (affirming dismissal of claims that amounted to a collateral attack on an arbitral award issued in Switzerland because "[the New York] Convention bars the litigation of [plaintiff's] claims ... in all but the courts of the primary jurisdiction, [and therefore] dismissal for lack of subject matter jurisdiction was appropriate in this case").[6]

Importantly, parties seeking vacatur of foreign arbitral awards governed by the New York Convention are not left without a remedy. Such parties may

---

[6]     In further support of their argument that the Court lacks jurisdiction to vacate the Awards, Respondents argue that the Swiss Federal Act on Private International Law (the "Swiss PILA"), which the parties chose as the procedural law that would govern the Arbitration, prohibits parties from contracting for vacatur proceedings to be brought anywhere other than the Swiss Federal Supreme Court, the highest court in Switzerland. (Resp. Opp. 25-26). The translated statute reads, in relevant, part:

> The only appeal authority is the Swiss Federal Supreme Court. The procedures are governed by Articles 77 and 119a of the Federal Supreme Court Act of 17 June 2005.

(Schlaepfer Decl. ¶ 10 (citing *Schweizerisches Zivilgesetzbuch* [ZGB], [Civil Code] Dec. 18, 1987, SR 291, RS 291, art. 191 (Switz.)). Although Respondents present a compelling argument that a plain reading of the text prevents arbitral awards governed by the Swiss PILA from being appealed in any court other than the Swiss Federal Supreme Court, the Court declines to reach this issue in light of its holding that it lacks jurisdiction on other bases.

25

request relief from tribunals in the primary jurisdiction "in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief." *Yusuf Ahmed*, 126 F.3d at 23 (citing N.Y. Conv. art. V(1)(e)). Additionally, they are free to seek the nonenforcement of an arbitral award in any secondary jurisdiction based on the "on the limited grounds specified in Article V [of the New York Convention]." *Karaha Bodas*, 500 F.3d at 115 n.1.

## CONCLUSION

For the foregoing reasons, the Court DENIES Petitioners' application to vacate the Partial and Final Awards in light of the Court's lack of subject matter jurisdiction. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

The Court will issue this Opinion in two versions. The Clerk of Court is directed to file the sealed version of this Opinion under seal, viewable to the Court and the parties only, and to file the redacted version of this Opinion on the public docket.

SO ORDERED.

Dated:    July 23, 2024
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

SPA-27

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
MOLECULAR DYNAMICS, LTD., SDBM
LIMITED, and CHAUNCEY CAPITAL CORP.,

|  |  |  |
|---|---|---|
| | Petitioners, | 22 **CIVIL** 5167 (KPF) |
| -against- | | **JUDGMENT** |

SPECTRUM DYNAMICS MEDICAL
LIMITED and BIOSENSORS INTERNATIONAL
GROUP LTD.,
                                    Respondents.
-------------------------------------------------------------X

It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Opinion and Order dated July 23, 2024, the Court DENIES Petitioners' application to vacate the Partial and Final Awards in light of the Court's lack of subject matter jurisdiction; accordingly, the case is closed.

**Dated**: New York, New York
       July 30, 2024

**DANIEL ORTIZ**

_____
**Acting Clerk of Court**

BY:

_____
**Deputy Clerk**

**United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York, 10 June 1958)**

*(Articles I – VI)*

**Article I**

1. This Convention shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between persons, whether physical or legal. It shall also apply to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought.

2. The term "arbitral awards" shall include not only awards made by arbitrators appointed for each case but also those made by permanent arbitral bodies to which the parties have submitted.

3. When signing, ratifying or acceding to this Convention, or notifying extension under article X hereof, any State may on the basis of reciprocity declare that it will apply the Convention to the recognition and enforcement of awards made only in the territory of another Contracting State. It may also declare that it will apply the Convention only to differences arising out of legal relationships, whether contractual or not, which are considered as commercial under the national law of the State making such declaration.

**Article II**

1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

2. The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.

3. The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

**Article III**

Each Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon, under the conditions laid down in the following articles. There shall not be imposed substantially more onerous conditions or higher fees or charges on the recognition or enforcement of arbitral awards to which this Convention applies than are imposed on the recognition or enforcement of domestic arbitral awards.

**Article IV**

1. To obtain the recognition and enforcement mentioned in the preceding article, the party applying for recognition and enforcement shall, at the time of the application, supply:

(a) The duly authenticated original award or a duly certified copy thereof;

(b) The original agreement referred to in article II or a duly certified copy thereof.

2. If the said award or agreement is not made in an official language of the country in which the award is relied upon, the party applying for recognition and enforcement of the award shall produce a translation of these documents into such language. The translation shall be certified by an official or sworn translator or by a diplomatic or consular agent.

**Article V**

1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

(a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of

the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

## Article VI

If an application for the setting aside or suspension of the award has been made to a competent authority referred to in article V (1) (e), the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award and may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security.

## Selected Provisions from the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*

### 9 U.S.C. § 1 – "Maritime transactions" and "commerce" defined; exceptions to operation of title

"Maritime transactions", as herein defined, means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; "commerce", as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such

Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

**9 U.S.C. § 2 – Validity, irrevocability, and enforcement of agreements to arbitrate**

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4.

**9 U.S.C. § 10 – Same; vacation; grounds; rehearing**

**(a)** In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

> **(1)** where the award was procured by corruption, fraud, or undue means;

> **(2)** where there was evident partiality or corruption in the arbitrators, or either of them;

> **(3)** where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

> **(4)** where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

**(b)** If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

**(c)** The United States district court for the district wherein an award was made that was issued pursuant to section 580 of title 5 may make an order vacating the award upon the application of a person, other than a party to the arbitration, who is

SPA-32

adversely affected or aggrieved by the award, if the use of arbitration or the award is clearly inconsistent with the factors set forth in section 572 of title 5.

**9 U.S.C. § 201 – Enforcement of Convention**

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter.

**9 U.S.C. § 202 – Agreement or award falling under the Convention**

An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

**9 U.S.C. § 203 – Jurisdiction; amount in controversy**

An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

**9 U.S.C. § 208 – Application**

Chapter 1 applies to actions and proceedings brought under this chapter to the extent that chapter is not in conflict with this chapter or the Convention as ratified by the United States. This chapter applies to the extent that this chapter is not in conflict with chapter 4.